**BLEVINS ASPHALT CONSTRUCTION COMPANY, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 79000.

Supreme Court of Missouri,
En Banc.

Feb. 25, 1997.

Lisa McKay, D. Patrick Sweeney, Springfield, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, for Respondent.

BENTON, Judge.

The Administrative Hearing Commission upheld the Director's assessment of sales and use tax on Blevins Asphalt Construction Company for: (1) paving materials that it purchased and then used to meet its installation contracts; (2) sales to out-of-state municipalities; and (3) paving equipment. This Court has jurisdiction of Blevins' appeal. *Mo. Const. art V, § 3; § 621.189.*[1] Affirmed.

All facts come from one stipulation. From 1991 to 1993, Blevins paid no sales or use tax on its purchases of materials. Instead, it gave its suppliers a "component part" exemption certificate. *§ 144.030.2(2).* If the terms of the exemption are not met, Blevins is liable to pay the tax. *Overland Steel, Inc. v. Director of Revenue,* 647 S.W.2d 535, 538 (Mo. banc 1983), citing *§ 144.210(1).*

Blevins sold asphalt two different ways. First, it "sold and installed some of its asphalt which it manufactured, upon request from customers at prices set forth in the contract with the customer." Blevins likewise sold and installed "chip and seal," consisting of rock chips and oil. Some of its customers—typically Missouri municipalities—were exempt from paying sales and use tax. Blevins did not pay tax on the materials used to fulfill its contracts with the exempt customers. On these transactions, the Director assessed $79,404.06 sales tax (with $3,970.25 additions), and $39,720.84 use tax (with $1,986.05 additions), plus interest on all amounts.

Second, Blevins "sold some of its asphalt, which it manufactured, at retail without installation to its customers," some of which were political subdivisions of other states. These purchasers, who took possession of the asphalt in Missouri, were exempt from sales tax in their respective states, but had no Missouri exemption. Because Blevins did not pay sales tax to the Director on these sales, the Director assessed $1,591.20 sales tax with $79.56 additions, plus interest on both amounts.

■ The AHC approved all the assessments, except for the additions. This Court will affirm the AHC's decision if it is authorized by law and supported by competent and substantial evidence upon the whole record. *Galamet, Inc. v. Director of Revenue,* 915 S.W.2d 331, 333 (Mo. banc 1996), citing *§ 621.193.*

---

1. All statutory citations are to RSMo 1994 unless otherwise indicated.

## I.

■ Section 144.030.2(2) exempts from sales and use tax:

Materials ... which when used in manufacturing ... become a component part or ingredient of the new personal property resulting from such manufacturing ... and which new personal property is intended to be sold ultimately for final use or consumption; ....

In this case, the Director does not dispute that the items at issue are materials used in manufacturing or that they are component parts or ingredients. The issue is whether Blevins manufactures "new personal property ... intended to be sold ultimately for final use or consumption."

Blevins asserts that it manufactured new personal property (asphalt) which it sold to customers. Specifically, Blevins contends that the title to the asphalt passed to the customer upon delivery, not after installation. Blevins characterizes the installation transaction as installation not of its paving materials, but of the customer's paving materials.

■ In sales and use tax, the taxable event is the passage of title or ownership. *Kurtz Concrete, Inc. v. Spradling,* 560 S.W.2d 858, 860 (Mo. banc 1978). Passage of title or ownership depends on the intent of the parties. *Id.* at 861; *Brinson Appliance v. Director of Revenue,* 843 S.W.2d 350, 352 (Mo. banc 1992). Factors such as custom or usage of trade may be used to determine such intent. *Kurtz Concrete,* 560 S.W.2d at 862.

In the transactions at issue, Blevins argues that the customer's signing a weight ticket when the asphalt arrived at the installation site shows that the customer took title before installation. Blevins also asserts that the industry custom was to pass title before installation. However, the stipulation indicates neither how signing the weight ticket affects transfer of title, nor any industry standard on the passage of title. The AHC found that "Blevins contracted with some customers to deliver and install on real property" asphalt, and that these were not sales contracts, but were "contracts to accomplish certain improvements." This finding is supported by competent and substantial evidence. Installation "by its own workers and equipment" was an integral part of Blevins' contracts with these customers. Blevins consistently sold the asphalt "applied." Thus, the AHC's key finding—that title did not pass until after the asphalt was installed as part of real property—is supported by competent and substantial evidence. *See Marsh v. Spradling,* 537 S.W.2d 402, 407 (Mo.1976).

If title had passed before the asphalt was installed on real property, Blevins would have created new personal property intended to be sold for final use or consumption, and could qualify for the component part exemption. However, because title passed after the asphalt was installed, Blevins created an improvement to real property which cannot be "new personal property ... intended to be sold ultimately for final use or consumption" within the meaning of the sales tax law.

■ This holding follows a long line of Missouri cases. Contractors who buy materials to construct a real estate improvement use and consume those materials and are subject to sales tax on their purchases. *City of St. Louis v. Smith,* 342 Mo. 317, 114 S.W.2d 1017, 1019–20 (1937). "Materials purchased by a contractor for use in meeting contractual obligations for the improvement of real property are used or consumed by the contractor; they are not resold." *Overland Steel, Inc. v. Director of Revenue,* 647 S.W.2d 535, 538 (Mo. banc 1983); *Bratton Corp. v. Director of Revenue,* 783 S.W.2d 891, 892 (Mo. banc 1990). As to construction contracts for real property, it is a "settled proposition that contractors and subcontractors are the consumers of materials purchased and used in the fulfillment of a construction contract and are therefore liable for sales and use taxes." *Becker Elec. Co. v. Director of Revenue,* 749 S.W.2d 403, 405 (Mo. banc 1988), citing *Overland Steel, Inc.,* 647 at 538; *J.E. Williams Const. Co. v. Spradling,* 555 S.W.2d 16, 24 (Mo. banc 1977); *City of St. Louis,* 114 S.W.2d at 1020.

Blevins emphasizes the facts of the *Becker* case. *Becker* stated the settled law, and applied it to a different situation. There, Becker Electric Company did not pay its suppliers for any construction materials; the

tax-exempt entity was the purchaser. *Id.* at 408. Here, Blevins paid the materials suppliers, and was the purchaser. The result of *Becker* was codified in section 144.062 RSMo Supp.1988.[2]

■ Finally, Blevins contends that the tax-exempt status of its customers negates any tax on its purchases. The AHC agreed that Blevins did not have to collect tax on its *sales* to the tax-exempt entities. However, the AHC correctly noted that "the Director assessed Blevins' purchases, not its sales."

## II.

■ Blevins asserts that it does not owe sales or use tax on its retail sales of asphalt to non-Missouri cities and counties. Blevins has the burden to prove that its sales are tax exempt. *Gammaitoni v. Director of Revenue*, 786 S.W.2d 126, 131 (Mo. banc 1990). It contends that accepting out-of-state exemption certificates in good faith relieves it from liability. *See § 32.200, art. V, § 2; All Star Amusement, Inc. v. Director of Revenue*, 873 S.W.2d 843, 844–45 (Mo. banc 1994). Good faith requires "honesty of intention, and freedom from knowledge of circumstances which ought to put the holder upon inquiry." *Conagra Poultry Co. v. Director of Revenue*, 862 S.W.2d 915, 918 (Mo. banc 1993); *See also All Star Amusement*, 873 S.W.2d at 844–45.

The AHC found that Blevins did not provide "sufficient evidence from which we can tell whether Blevins had any basis for a good faith belief in a Missouri exemption." In fact, the record contains neither the exemption certificates nor any of their language. The AHC's finding is authorized by law and supported by the record.

## III.

■ Blevins purchased paving, rolling and other equipment, stipulated as being used "in conjunction with the installation of asphalt." It did not pay sales tax on these purchases, claiming an equipment exemption under section 144.030.2(5) for:

Machinery and equipment ... purchased and used to establish new or to expand existing manufacturing ... plants in the state if such machinery and equipment is used directly in manufacturing ... a product which is intended to be sold ultimately for final use or consumption;....

The Director assessed $19,353.16 sales tax with $979.66 additions, plus interest on both amounts. Blevins asserts that under the "integrated plant" rule, the paving equipment is an integral part of its manufacturing process and should be tax exempt. *See Concord Pub. House v. Director of Revenue*, 916 S.W.2d 186, 190, 192 (Mo. banc 1996); *Floyd Charcoal Co. v. Director of Revenue*, 599 S.W.2d 173, 177–78 (Mo.1980).

The AHC found that the paving equipment was not an integral part of the manufacturing process. As for the asphalt sold at retail without installation, the paving equipment is not used in any way. *§ 144.030.2(5); Concord Pub. House*, 916 S.W.2d at 190. As for the asphalt it installs, as discussed above, the asphalt was not "a product which is intended to be sold ultimately for final use or consumption." *§ 144.030.2(5); Concord Pub. House*, 916 S.W.2d at 190. The AHC determination is authorized by law and is supported by the record.

## IV.

■ Finally, Blevins objects to the additional 1.5% local use tax under section 144.748, which was declared unconstitutional after the audit period. *See Associated Industries v. Director of Revenue*, 918 S.W.2d 780, 785 (Mo. banc 1996), after remand from *Associated Industries of Missouri v. Lohman*, 511 U.S. 641, 654, 114 S.Ct. 1815, 1824, 128 L.Ed.2d 639, 651 (1994).

■ This Court need not address the issue because Blevins did not raise this claim with the Director or the AHC. Generally, administrative actions should not be set aside without an opportunity for the agency, on timely request by the complainant, to consider the issue, unless injustice might otherwise result. *Mills v. Federal Soldiers Home*, 549

**2.** In 1994, the General Assembly amended section 144.062 to permit municipalities to give contractors exemption certificates for materials purchased to complete contracts for municipalities. *S.B. Nos. 477, 478, 689, 608 & 532, 1994 Mo. Laws 472–73.*

S.W.2d 862, 868 (Mo. banc 1977). *See also Artman v. State Bd. Of Registration,* 918 S.W.2d 247, 252 (Mo. banc 1996). Since Blevins could have raised this issue with the Director or the AHC, and may still have refund claims, no injustice will result.

### V.

The decision of the AHC is affirmed.

All concur.