

# SUPREME COURT OF MISSOURI
## en banc

BEN HUR STEEL WORX, LLC,        )
                                            )
              Appellant,            )
      v.                             )        No. SC94209
                                            )
DIRECTOR OF REVENUE,         )
                                            )
              Respondent.       )

PETITION FOR REVIEW OF A DECISION OF THE
ADMINISTRATIVE HEARING COMMISSION
The Honorable Sreenivasa Rao Dandamudi, Commissioner

### *Opinion issued January 13, 2015*

Ben Hur Steel Worx, LLC ("Ben Hur") is a subcontractor that purchases steel beams and other steel components that are used to fulfill its contracts to construct steel frames for large-scale commercial buildings and structures. Ben Hur petitioned the Director of Revenue for sales and use tax refunds under § 144.054.2.[1] The Director denied the request, and Ben Hur appealed to the Administrative Hearing Commission ("AHC"). The AHC decided that Ben Hur did not meet the requirements for a tax exemption under § 144.054.2 and affirmed the Director's denial of Ben Hur's request for sales and use tax refunds. Ben Hur then petitioned this Court for review of the AHC's decision. The decision of the AHC is affirmed.

---

[1] All statutory citations are to RSMo Supp. 2013, unless otherwise specified.

## Factual and Procedural Background

Ben Hur's refund applications were for various months in 2008, 2009, and 2010 and sought nearly $200,000. The AHC found the following facts:

1. Ben Hur is a Missouri limited liability corporation, which was 50% owned by Ben Hur Construction Company at all times relevant to this case.

2. One of Ben Hur's business endeavors is subcontracting with commercial construction companies for the provision of labor, materials, and equipment necessary to furnish and install structural steel beams, plates, angles, and other components in the process of construction of large scale commercial buildings and structures. During the relevant time, Ben Hur would often partner with Ben Hur Construction Company to accomplish installation for these jobs.

3. In order to fulfill its contractual obligations, Ben Hur buys steel beams and steel plates directly from steel mills, at times when the mills are producing the size and shape Ben Hur needs for a particular project, or from steel supply houses that keep inventories of such materials when they are not available from the mills.

4. Ben Hur does not pay sales or use tax on its purchase of steel beams and plates.

5. Once it purchases the steel, Ben Hur may modify the steel beams according to project drawings and specifications by performing various tasks such as cutting them to length, drilling holes and slots in them, beveling the edges, cambering or curving the steel, coping or cutting the steel at an angle, grinding, painting, and attaching other steel pieces, such as angles, clips, or steel plate [sic] by bolting or welding.

6. If the steel components it purchases are for a taxable construction project, Ben Hur pays tax on the components. If the project is for a tax-exempt entity, such as a qualified educational institution or healthcare organization, Ben Hur does not pay sales tax on the purchased materials.

7. Ben Hur maintains a facility in Lemay, Missouri, where it uses machinery and equipment to modify raw steel components by shaping and finishing them. At that facility, large pieces of steel are processed using large saws, drills, grinders, and welding equipment while being moved and transferred by cranes and hydraulic lifts.

8. Typically, Ben Hur buys and prepares steel components for incorporation into large scale commercial buildings.

9. In some instances, Ben Hur prepares such components for other contractors and collects sales tax from those contractors when the components are sold. Those transactions are not the subject of this appeal.

10. At all times relevant to this appeal, when Ben Hur was a party to the construction contract, it employed all of the labor, materials, and equipment necessary to deliver and install fabricated structural components in buildings.

## Analysis

This case involves the construction of a revenue law, providing this Court with exclusive appellate jurisdiction. Mo. Const. art. V, § 3; *see also* § 621.189. This Court reviews the AHC's interpretation of a revenue statute *de novo*. *AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 128 (Mo. banc 2014). The AHC's decision will be upheld if authorized by law and supported by substantial and competent evidence on the record as a whole, if no mandatory procedural safeguard is violated, and if the affirmation of the AHC's decision does not create a result clearly contrary to the General Assembly's reasonable expectations. Section 621.193, RSMo 2000.

Tax exemptions are strictly construed against the taxpayer. *AAA Laundry*, 425 S.W.3d at 128. A taxpayer must show by "clear and unequivocal proof" that it qualifies for an exemption, and all doubts are resolved against the taxpayer. *Id.* Section 144.054.2 exempts the following from sales tax:

> [E]lectrical energy and gas, whether natural, artificial, or propane, water, coal, and energy sources, chemicals, machinery, equipment, and **materials used or consumed in the manufacturing, processing, compounding, mining, or producing of any product**, or used or consumed in the processing of recovered materials, or used in research and development

3

related to manufacturing, processing, compounding, mining, or producing any product . . . .

(Emphasis added.)

The primary rule of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue. *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). This Court looks to canons of statutory interpretation only when the meaning of a statute "is ambiguous or would lead to an illogical result that defeats the purpose of the legislation." *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014). This Court interprets statutes in a way that is not hyper-technical, but instead, is reasonable and logical and gives meaning to the statute. *Id.* at 203.

In the context of this case, Ben Hur must prove three criteria to qualify under § 144.054.2 for the sales and use tax exemption: (1) that it consumed or used materials (2) during the manufacturing, processing, compounding, or producing (3) of a product. *Fred Weber, Inc. v. Director of Revenue*, ___ S.W.3d ___, No. SC94109 (Mo. banc 2015). The taxpayer has the burden of proof. *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012). If the taxpayer fails to meet any of these three criteria, the taxpayer does not qualify for exemption under § 144.054.2. *See Aquila*, 362 S.W.3d 1; *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118 (Mo. banc 2014); *AAA Laundry*, 425 S.W.3d 126; *Fenix Constr. Co. v. Dir. of Revenue*, ___ S.W.3d ___, No. SC93915, 2014 WL 6679523 (Mo. banc 2014); *Fred Weber, Inc. v. Director of*

*Revenue*, ___ S.W.3d ___, No. SC94109 (Mo. banc 2015). The second prong is dispositive in this case.

In *Union Elec. Co.*, this Court held that the General Assembly intended the plain and ordinary language of § 144.054.2 to apply only to "what can best be described as large-scale industrial activities." 425 S.W.3d at 124. Ben Hur, however, is not engaged in this type of large-scale industrial activity. It is engaged in construction. *See Fred Weber, Inc. v. Director of Revenue*, ___ S.W.3d ___, No. SC94109 (Mo. banc 2015). The word "construction" does not appear in § 144.054, nor do any words that would be associated with construction activities. The General Assembly knows how to delineate between construction activities and the large-scale industrial activities it intended to exempt in § 144.054.2. This is best demonstrated by another tax exemption statute within chapter 144.

Section 144.062 provides a tax exemption for materials purchased for the "purpose of constructing, repairing or remodeling" for certain tax-exempt entities. It describes various types of exempt entities, and among them are various types of healthcare organizations and "[a]ny institution of higher education supported by public funds or any private not-for-profit institution of higher education." Section 144.062.1(2) and (3). The AHC's factual findings make it clear that not only was Ben Hur aware of the tax exemption for construction materials in § 144.062.1, it used that exemption. The AHC found that Ben Hur paid tax on the steel components it purchased for a construction project with a non-exempt entity. However, Ben Hur did not pay tax if the project was for a tax-exempt entity, such as a qualified educational institution or healthcare

5

organization. These factual findings dovetail with the language of § 144.062. This is evidence that not only was Ben Hur engaged in construction, but it also was taking advantage of construction-oriented tax exemptions.

Ben Hur is now trying to use § 144.054.2 as a way to seek tax reimbursement for materials purchased to fulfill construction contracts it has with non-exempt entities. This is contrary to the language and interpretation this Court has given § 144.054.2. Had the General Assembly meant for "construction" activities to be included in § 144.054.2, it would have used terminology associated with construction activities. It also could have achieved the same result by expanding § 144.062 to allow an exemption for materials purchased for use in construction for non-exempt entities. This is not what the General Assembly chose to do.

Further, as expressed by the AHC in its decision, if Ben Hur were allowed a tax exemption for its construction activities, it would cut against one of this Court's well-settled principles stated in *Blevins Asphalt Construction Company v. Director of Revenue,* 938 S.W.2d 899 (Mo. banc 1997).[2] The taxpayer in *Blevins* argued that it was not required to pay tax on the materials it purchased from its suppliers because the asphalt it manufactured was tangible personal property, sold for the purpose of final use or consumption. *Id.* at 901. This Court upheld the AHC's denial of the exemption, reasoning that "it is a settled proposition that contractors and subcontractors are the consumers of materials purchased and used in the fulfillment of a construction contract

---

[2] While *Blevins* interprets § 144.030.2(2), RSMo 1994, the principles stated within it are equally applicable in interpreting § 144.054.2 in this case.

and are therefore liable for sales and use taxes." *Id.* (citations and internal quotation marks omitted). The Court also held "[m]aterials purchased by a contractor for use in meeting contractual obligations for the improvement of real property are used or consumed by the contractor; they are not resold." *Id.* (citations and internal quotation marks omitted). These principles apply here.

Ben Hur is a subcontractor using steel beams, plates, angles, and other components to fulfill its contractual obligations to construct steel frames for commercial buildings. Because Ben Hur is using these construction materials in fulfillment of its *construction* contracts, an activity not exempt under the plain and ordinary language of § 144.054.2, it has failed to meet all three statutory criteria and does not qualify for a sales and use tax exemption. The decision of the AHC is affirmed.

_____
Zel M. Fischer, Judge

All concur.

7